UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

CARY WILKERSON,          )
                               )     Judge Mattice
       *Plaintiff,*       )
                               )     Case No. 1:09-cv-168
v.                           )
                               )
CITY OF CHATTANOOGA, *et al.*  )
                               )
       *Defendants.*     )

## MEMORANDUM AND ORDER

The Motion for Summary Judgment of Defendants City of Chattanooga ("the City"), Ron Littlefield, in his official capacity as Mayor of Chattanooga, Tennessee, the Chattanooga Police Department ("CPD"), Freeman Cooper, in his official capacity as Chief of Police for the City of Chattanooga, and Dale Lockhart, in his official and individual capacity, is presently before the Court. (Court Doc. 21.)   The action challenges the constitutionality of a search of Plaintiff Cary Wilkerson's ("Plaintiff") vehicle and the seizure of certain monies that were obtained as a result of that search.

Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), which are based upon Defendants' alleged violation of his rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution.  Plaintiff also asserts a civil conspiracy allegation against Defendants pursuant to 42 U.S.C. § 1985 ("Section 1985").  In addition, Plaintiff brings several state law claims including: (1) assault; (2) interference with freedom of contract; (3) intentional interference with prospective economic advantage; (4) intentional infliction of emotional distress; (5) negligence; (6) intentional interference with

another's business; and (7) conversion. (Court Doc. 1, Compl. ¶¶ 20-25.) Jurisdiction over this action arises under 28 U.S.C. §§ 1331 and 1332 and is not in dispute.

For the reasons explained below, Defendants' Motion for Summary Judgment will be **GRANTED.**

## I.    LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party may meet this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or by simply " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. To refute such a showing, the nonmoving party may not simply rest on its pleadings. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996); *see*

*Anderson*, 477 U.S. at 249. The nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.   FACTS

The facts, reviewed in the light most favorable to Plaintiff, are as follows.

On June 24, 2008, Plaintiff, a Kentucky resident, was traveling in a rented automobile from Lexington, Kentucky to Atlanta, Georgia. (Compl. ¶ 8; Court Doc. 19-2, Wilkerson Dep. at 96-97.) Plaintiff, a concert promoter, was en route to meet with a music performer about potentially performing in Lexington, Kentucky. (Compl. ¶ 9, Wilkerson Dep. at 93.) Plaintiff, however, was running late for his scheduled meeting with this performer. (Wilkerson Dep. at 92, 95.)

At approximately 11:00 p.m. on June 24, 2008, Officer Dale Lockhart of the CPD stopped Plaintiff's vehicle for traffic violations. (Court Doc. 19-1, April 28, 2009 Safety Dep.

Tr., Case No. H49898, hereinafter "Tr.," at 11.)  Lockhart's radar indicated Plaintiff, who was traveling southbound on Interstate 75, was driving 74-mph in a 55-mph zone.  (Tr. at 52.)  After also observing that Plaintiff was following too closely behind the vehicle in front of him, Lockhart activated his emergency lights and pulled Plaintiff's vehicle over at approximately the 100 mile marker of Interstate 75 South.  (*Id.*)  Plaintiff did not believe he was speeding and testified that the last speed limit sign he saw indicated the speed limit was 70 mph.  (Wilkerson Dep. at 92-93.)

After Plaintiff was pulled over, Lockhart requested Plaintiff's license and the vehicle's registration documents.  After checking these materials, Lockhart asked Plaintiff to step outside of his car and informed Plaintiff that he had previously received a reckless driving citation and asked whether there was anything illegal in the vehicle.  (Tr. at 92-93.)  Plaintiff maintained there was nothing illegal in the vehicle, but consented to Lockhart searching the vehicle.  (*Id.*)  Plaintiff testified that Lockhart then "detained [Plaintiff] for his safety until a back up officer came."  (*Id.*)

CPD Officer Lewis provided Lockhart backup.  Lewis is a sergeant with the CPD's Special Investigations Division in the Interdiction Unit.  (*Id.* at 9, 11.)  This unit focuses its efforts on finding illegal contraband that is traveling through the highways of Hamilton County, Tennessee.  (*Id.* at 10.)  Lockhart has also been a member of this division since 2003.  (*Id.* at 47-48.)  Members of this division go through specialized training in identifying narcotics and the procedures for seizing narcotics, which include the United States Drug Enforcement Agency's Interdiction Training.  (*Id.* 43, 47-48.)

Prior to searching Plaintiff's vehicle, Lockhart placed Plaintiff in handcuffs and set him by the passenger door of his patrol vehicle. (*Id.*) Plaintiff described the search of his vehicle in the following manner:

> "He was searching the - - the car all and officer had come up and he - - I was talking to him and then they, after they were searching [m]y bags in my car and everything, he asked me what was in my pocket. I said it was money and my wallet. He pulled the money out. It [w]as $3,000.00. And then I had my wallet and he said what was in my wallet. I said a thousand. So he said, you sure there is no drugs or nothing illegal in the car. At that time I stated again, no. So another officer was already looking underneath the hood, came back, they went and got some tools, unfastened some things, looked in there, found a bag of money. At that time, I didn't make no statements. I didn't say nothing. They said well, whose money is this? I didn't say nothing. I said well, I had already told you that I was going to book a artist down here. And he said okay. So then, at that point, they came back and said they found a trace of marijuana."

(Wilkerson Dep. at 93-94.)

Plaintiff admits that prior to traveling to Atlanta, Georgia, he vacuum sealed $45,000.00 in U.S. currency and placed it in the hood of the rental vehicle. (Tr. at 90.) Plaintiff testified that after the CPD officers discovered the money, they transported him to the police department's impound facility and questioned him. (Wilkerson Dep. at 105.)

The officers traveled from Interstate 75 back to the police station with Plaintiff, Plaintiff's rental vehicle, and the money they had located. At the station, a K-9 drug dog was introduced to the money and indicated that there was a presence of the odor of narcotics on the bills. (Tr. at 20.) An ion scan was conducted on the money, which revealed an abnormally high amount of narcotics on the bills. (*Id.* at 21.) After finishing

this test, the officers filled out a Notice of Seizure Form, which Plaintiff signed before being released.  (*Id.* at 25.)

After questioning Plaintiff, the officers seized all of the money except for the $1,000 that was in his wallet.  (*Id.* at 105-106.)  The officers then provided Plaintiff seizure paperwork, informed him that his car was downstairs and that he was free to leave.  (*Id.*)  In accordance with the Tennessee Drug Act, the officers seized $48,000.00 from Plaintiff's person and the rental vehicle he was driving..  (*Id.* at 25-26.)  Plaintiff testified that no CPD officers punched, kicked, or hit him during this incident.  (*Id.* 113-114.)

Officer Lockhart decided to seize the $48,000.00 based on evidence that the money was being used in furtherance of the delivery of narcotics.  (Tr. at 49.)  The officers identified trace amounts of marijuana "shake" on the floorboard of the rental vehicle.  (*Id.* at 15-16.)  Lewis stated that money is often sealed, as it was in Plaintiff's vehicle, in order to conceal the odor of the narcotics.  (*Id.*)  Plaintiff, however, was not charged with any criminal offenses.  (*Id.*)

After his release, Plaintiff continued onto Atlanta, Georgia.  (Court Doc. 28, Pl.'s Resp. Br. at 4.)  Plaintiff contends that he could not book the musician he intended on meeting in Atlanta, Georgia because he needed the seized funds "to provide consideration necessary for the proposed contract."  *Id.*

Plaintiff contends that his vehicle was searched and his money was seized because of his race.  (Wilkerson Dep. at 129-130.)  Although no explicit racial comment was ever made by the CPD officers, Plaintiff interpreted an officer's request for a business card to verify that he was, indeed, a concert promoter to be implicitly racist.  (*Id.*)

After a hearing before the Commissioner of the Tennessee Department of Safety in April 28, 2009, an initial order was entered on June 25, 2009, which ordered that the $48,000.00 be forfeited to the seizing agency. (Court Doc. 22, Defs.' Br. at 5.) The initial order was affirmed on September 21, 2009. (*Id.*) Plaintiff, however, requested judicial review of this order and ultimately obtained an order overturning the previous orders. (*Id.*) On December 21, 2009, an order was entered which required Tennessee to return the seized monies to Plaintiff. (Wilkerson Dep. at 121.)

## III. ANALYSIS

### A. 42 U.S.C. § 1983

Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 makes liable only those who, while acting under color of state law, deprive another of a right secured by the Constitution or federal law." *Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 636 (6th Cir. 2005).

To establish a claim pursuant to § 1983, a plaintiff must demonstrate two elements: "(1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that he was subjected or caused to be subjected to this deprivation by a person acting under color of state law." *Gregory v. Shelby County*, 220 F.3d 433, 441 (6th Cir. 2000). Section 1983 "creates no substantive rights; it merely provides remedies for

deprivations of rights established elsewhere." *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000). Here, Plaintiff alleges that Defendants violated his Fourth, Fifth, and Fourteenth Amendment rights under the U.S. Constitution.

### 1. Plaintiff's Claims Against the City, the CPD and Its Official Actors

Plaintiff's Complaint alleges that the City, the CPD, Ron Littlefield, in his official capacity, Freeman Cooper, in his official capacity, and Dale Lockhart, in his official capacity, violated his rights under 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution as a result of inadequate or improper supervision and improper or inadequate screening and training. (Compl. ¶ 23.) Plaintiff's Complaint also alleges that the City, the CPD, Littlefield, Cooper, and Lockhart are "responsible for the acts or failures to act of its authorized law enforcement police officer, namely, Defendant Dale Lockhart, under the Doctrine of *Respondeat Superior.*" (Compl. ¶ 35.)

The Court notes, at the outset, that Plaintiff's official capacity claims against Defendants Littlefield, Cooper, and Lockhart are governed by the same standard as Plaintiff's claims against the City. Suing a municipal officer in his official capacity for a constitutional violation pursuant to 42 U.S.C. § 1983 is the same as suing the municipality itself, and thus a successful suit against a municipal officer in his official capacity must meet the requirements for municipal liability stated in *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 (1978); s*ee Hafer v. Melo,* 502 U.S. 21, 25 (1991)(explaining that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent" and that "because the real party in interest in an official-

capacity suit [against a municipal officer] is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law" (internal quotation marks and citations omitted)).   Similarly, Plaintiff's claims against the CPD are identical to Plaintiff's claims against the city and, therefore, would be considered under precisely the same standards as the Court must employ in its analysis of Plaintiff's claims against the City.  *See Tennessee v. Garner*, 471 U.S. 1, 22 (1985).  Accordingly, the Court will analyze Plaintiff's claims against the City, the CPD, and Littlefield, Cooper, and Lockhart's official capacity claims together.

To impose liability on a governmental entity under 42 U.S.C. § 1983, a plaintiff must show that there was some official governmental policy or custom in place that violated his constitutional rights; a governmental entity cannot be held liable under § 1983 for the acts of its employees under a theory of *respondeat superior. Monell v. Dep't of Social Servs.*, 436 U.S. at 691 (1978)**.**

There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal  rights violations. *Id*.; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986); *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997); *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996).

There are two ways to establish a policy or custom. A policy exists when a "decisionmaker possessing final authority to establish municipal policy with respect to the action" issues either an official policy, proclamation, or edict. *Andrews*, 895 F.2d at 1480 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). A course of conduct will be considered to be a "custom" when, even though not authorized by law, "such practices of state officials [are] so permanent and well settled" as to virtually constitute law. *Id.* (citing *Monell*, 436 U.S. at 690, 98 S. Ct. at 2035 (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)).

In *Doe v. Claiborne County, Tenn, By and Through Claiborne County Bd. of Educ.*, 103 F.3d 495 (6th Cir. 1996), the United States Court of Appeals for the Sixth Circuit explained:

> A "custom" for purposes of *Monell* liability must be "so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691, 98 S. Ct. at 2036 (internal quotation marks and citation omitted); *see also Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir.), *cert. denied*, 510 U.S. 826 (1993). In turn, the notion of "law" must include "deeply embedded traditional ways of carrying out state policy." *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning*, 310 U.S. 362, 369 (1940). It must reflect a course of action deliberately chosen from among various alternatives. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985). In short, a "custom" is a "legal institution" not memorialized by written law. *Feliciano*, 988 F.2d at 655.

*Doe*, 103 F.3d at 507-08.

In this instance, Plaintiff alleges that Defendants implemented or executed a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers, or as the result of a custom that infringed upon his constitutional rights.

Pl.'s Resp. Br. at 7. Plaintiff, however, has not presented any evidence whatsoever that any policy maker of the City, the CPD, Mayor's Office of the City of Chattanooga, or the Police Chief of the City of Chattanooga's Police Department implemented or executed a policy or custom that injuries Plaintiff. In fact, Plaintiff admits he has no knowledge of a policy or custom upon which his *Monell* liability claim may rely upon. (Wilkerson Dep. 131.)

Moreover, there is no evidence to support Plaintiff's claim that Defendants are liable because of a policy of inadequate training or supervision. Plaintiff's responsive briefing provides no evidence of a lack of training. In contrast, Defendants have provided the Court significant evidence that the City does not maintain any policy, custom, or practice of employing police officers who are not properly trained, supervised, or screened. (Court Doc. 21, Rawlston Aff. ¶ 5.) Defendants have also presented evidence that City did not have a policy, custom, or practice of allowing its police officers: (1) to use excessive or unwarranted force on individuals taken into custody; (2) to engage in unlawful searches and seizures during traffic stops; (3) to arrest and/or prosecute persons without probable cause; and (4) to not properly screen its police officers prior to employment. (Rawlston Aff. ¶¶ 4-5, 8; Court Doc. 20, Allen Aff. ¶ 3.) Thus, the Court finds that there is no evidence to support Plaintiffs' Fourth and Fifth Amendment municipal liability claims.

In addition, there is no evidence to support Plaintiff's substantive due process claim under a theory of municipal liability. Defendant Lockhart's seizure of Plaintiff's monies was in accordance with Tennessee law. The Tennessee Drug Control Act provides municipal law enforcement the authority to seize monies used or intended to be used to facilitate any violation of that statute. Tenn. Code Ann. § 53-11-451. Based on the record before the Court, it appears as though Defendant Lockhart followed the edicts of this statute.

Furthermore, in accordance with this statute and Tennessee state law, Plaintiff was afforded due process in challenging the seizure, which he utilized successfully.

Thus, the Court finds that, based on the evidence in the record, no reasonable juror could conclude in Plaintiff's favor. Accordingly, Plaintiff's Fourth, Fifth, and Fourteenth Amendment claims arising under 42 U.S.C. § 1983 against the City, the CPD, Ron Littlefield, in his official capacity, Freeman Cooper, in his official capacity, and Dale Lockhart, in his official capacity, will be **DISMISSED WITH PREJUDICE**.

### 2. Plaintiff's 42 U.S.C. § 1983 Claim Against Defendant Lockhart (Individual Capacity)

Plaintiff has also sued Defendant Lockhart in his individual capacity. Specifically, Plaintiff contends that Defendant Lockhart's "wrongly detain[ed] Plaintiff for several hours" and "wrongfully seiz[ed] the funds referenced hereinabove [sic] (*i.e.* the sum of $48,000.00) in violation of his constitutional rights. (Compl. ¶ 17.) Defendant Lockhart contends that he is entitled to summary judgment on the basis of qualified immunity because he did not falsely arrest, imprison, maliciously prosecute, use improper force, or improperly search or seize Plaintiff. (Def.'s Br. at 16.)

A government official who is performing a discretionary function is entitled to qualified immunity from suit as long as his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Painter v. Robertson*, 185 F.3d 557, 567 (6th Cir. 1999). It is commonly noted that qualified immunity is immunity from suit, not just a defense to liability. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001).

The defendant bears the initial burden of coming forward with facts which suggest that he was acting within the scope of his discretionary authority at the time in question. *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992). The burden then shifts to the plaintiff to put forward "specific, nonconclusory factual allegations" that would defeat the immunity. *Siegert*, 500 U.S. at 236 (Kennedy, J., concurring). The ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity. *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005); *Cartwright v. City of Marine City*, 336 F.3d 487, 490-491 (6th Cir. 2003) (citing *Rich*, 955 F.2d at 1095); *Hamilton v. Myers*, 281 F.3d 520, 531 (6th Cir. 2002).

Once a defendant claims the affirmative defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to the defense of qualified immunity. *Myers v. Potter,* 422 F.3d 347, 352 (6th Cir. 2005) (citing *Gardenhire,* 205 F.3d at 311). Law enforcement officials will be entitled to qualified immunity " 'when their decision was *reasonable,* even if mistaken.' " *Pray,* 49 F.3d at 1158 (quoting *Castro v. United States,* 34 F.3d 106, 112 (2d Cir. 1994)). Further, " '[if] officers of reasonable competence could disagree on this issue, immunity should be recognized.' " *Pray,* 49 F.3d at 1158 (quoting *Malley v. Briggs,* 475 U.S. 335, 349, 106 S.Ct. 1092, 1100, 89 L.Ed.2d 271 (1986)).

A plaintiff must establish two factors to show that a defendant is not entitled to qualified immunity: (1) that the facts as alleged show a violation of a constitutional right, and (2) that the right violated was clearly established. *Saucier*, 533 U.S. at 201. While it is no longer mandatory for the Court to analyze the two-prongs set forth in *Saucier*

sequentially, each of the prongs must be addressed by the Court. *Pearson v. Callahan*, 129 S. Ct. 808, 819 (2009).

In this instance, the evidence supports a finding that Defendant Lockhart met his burden of demonstrating that he was acting within the scope of his authority during the events of June 24,2008. In addition, the evidence indicates that Defendant Lockhart did not violate any of Plaintiff's clearly established rights. With respect to Plaintiff's traffic stop, an officer must have probable cause to make a stop for a civil infraction or a reasonable suspicion of an ongoing crime to make a stop for a criminal violation. *U.S. v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). In this instance, that standard was clearly met. Neither party disputes that Defendant Lockhart had probable cause to stop Plaintiff for speeding.

The Sixth Circuit has explained that, when a vehicle is lawfully stopped, an officer may request a driver's license and vehicle registration. *United States v. Hill*, 195 F.3d 258, 269 (6th Cir. 1999). In addition, during a traffic stop, an officer may ask questions that do not relate to the initial stop as long as these queries are not unusually intrusive. *United States v. Burton*, 334 F.3d 606, 613-14 (6th Cir. 2007)(questions about the occupants' itinerary, reasons for travel and identification are not overly intrusive); *Hill*, 195 F.3d at 268 (officer may ask questions about identity, travel plans and ask consent to search during traffic stop). Once the purpose of the traffic stop is completed, however, officers may not further detain occupants unless something occurred during the traffic stop that generated reasonable suspicion to justify a further detention. *United States v. Perez*, 440 F.3d 363, 370 (6th Cir. 2006).

Viewing the facts in the light most favorable to Plaintiff, the Court concludes that Defendant Lockhart's actions during the traffic stop did not constitute a violation of Plaintiff's constitutional rights. During the traffic stop, Defendant Lockhart properly requested Plaintiff's driver's license and registration, asked questions about his reasons for travel, and received informed consent to search the vehicle from Plaintiff. During this search, Defendant Lockhart discovered $45,000.00 in currency vacuum sealed and hidden under the hood and the marijuana "shake" in the floorboard. Both discoveries constituted reasonable suspicion of criminal activity and probable cause to conduct additional testing on the materials discovered at the traffic stop. *U.S. v. Jiminez*, 564 F.3d 1280, 1283 (11th Cir. 2009) (explaining that "marijuana 'shake' " is "the discarded portions of harvested marijuana plants.); *U.S. v. Freeman*, 299 Fed. App'x 556, 557 (6th Cir. Nov. 4, 2008) (identifying marijuana shake as residue containing leaves, stems, and a stalk).

The evidence in the record supports a finding that the $48,000.00 at issue was seized in accordance the Tennessee Drug Control Act and after "seizure of the property, the forfeiture procedure" afforded Plaintiff due process. Tenn Code Ann. § 53-11-51(6)(A); *Fell v. Armour*, 355 F. Supp. 1319, 1325-26 (M.D. Tenn. 1972). A "seizure without a warrant but based upon probable cause to believe the property has been used in violation of the [Tennessee Drug Control Act] is not an unreasonable seizure under the Fourth Amendment." *Fell*, 355 F. Supp. At 1326. Thus, the Court finds that Defendant Lockhart's seizure of Plaintiff's monies did not constitute a violation of his constitutional rights.

Defendant Lockhart was also entitled to place Plaintiff in handcuffs and briefly detain him during the search of Plaintiff's vehicle. The Sixth Circuit has held that "[l]aw enforcement officials have a limited authority to detain occupants of a premises while a

proper search is being conducted." *United States v. Bohannon,* 225 F.3d 615, 616 (6th Cir. 2000). Similarly, it follows that law enforcement officials have a limited authority to detain occupants of a motor vehicle while a proper search is being conduction.  Several reasons for this rule exist, including the prevention of flight of a suspect and the interest in reducing the risk of harm to law enforcement officers.  *Id.* (citing *Summers,* 452 U.S. at 705).

Plaintiff, however, has presented no evidence to support his contention that Defendant Lockhart would not be entitled to qualified immunity.  Thus, the Court finds that Plaintiff has not met his burden in establishing that Defendant Lockhart is not entitled to qualified immunity.  Accordingly, Plaintiff's individual capacity Fourth, Fifth, and Fourteenth Amendment claims against Officer Lockhart will be **DISMISSED WITH PREJUDICE.**

**B.      Plaintiff's Civil Conspiracy Claim**

Plaintiff's civil conspiracy allegation, pursuant to 42 U.S.C. § 1985, also fails as a matter of law.  .  Section 1985 provides a cause of action when "two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws . . ." or when "two or more persons . . . conspire . . . , for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . . . ."  42 U.S.C. § 1985(2), (3).

Although Plaintiff contends that he was discriminated against as a result of his race, he provides no evidence or testimony regarding any action of Officer Lockhart that would indicate a racial animus outside of his vague opinion that Lockhart's request for a business card to verify his travel plans was due to his race.  In order to demonstrate a conspiracy

in violation of § 1985, a plaintiff must show more than vague or conclusion allegations unsupported by material facts. The language in § 1985 also requires that there be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 834 (1983); *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Fox v. Mich. State Police Dep't*, No. 04-2078, 2006 WL 456008, at *3 (6th Cir. Feb. 24, 2006); *Dallas v. Holmes*, 137 Fed. App'x 746, 752 n.5 (6th Cir. 2005); *Bragg v. Madison*, 20 Fed. App'x 278, 285 (6th Cir. 2001).

Plaintiff admitted in his deposition that he had no evidence of any agreement among the Defendants to violate his constitutional rights, but he contends, nonetheless, that Defendants engaged in a civil conspiracy against him. (Wilkerson Dep. At 131.) As the United States Court of Appeals for the Sixth Circuit has made clear, unsubstantiated allegations that lack even the mere existence of a scintilla of evidence must be dismissed. *Shelton v. City of Taylor*, 92 Fed. App'x 178, 183 (6th Cir. 2004) (*"even considering the evidence in the light most favorable to the plaintiff, it amounts to no more than unsubstantiated allegations, and therefore the district court did not err in granting summary judgment on the excessive force claims."). Taking all of this evidence in the light most favorable to Plaintiff, the Court finds that no reasonable juror would conclude that Defendants engaged in a Section 1985 civil conspiracy. Accordingly, Plaintiff's Section 1985 civil conspiracy claim against Defendants will be **DISMISSED WITH PREJUDICE.**

## C.     Plaintiff's State Law Claims

Plaintiff also asserts assault, intentional interference with freedom of contract, intentional interference with prospective economic advantage, intentional inference with another's business, intentional infliction of emotional distress, negligence, conversion, and punitive damages state law claims against Defendants.  Each claim will be addressed in turn.

### 1.     Plaintiff's Assault Claim

The City, the CPD, and the individual Defendants who are named in their official capacities, are entitled to summary judgment on Plaintiff's state law assault claim.   The Tennessee Tort Liability Act waives governmental immunity for negligence that proximately causes injuries arising from the tort of assault.  *Limbaugh v. Coffee Med. Ctr.*, 59 S.W. 3d 73 (Tenn. 2001) (holding that the intentional torts exception of Tenn.Code Ann. § 29-20-205(2) does not include the torts of assault and battery); *Hale v. Randolph,* No. 1:02-cv-334, 2004 U.S. Dist. LEXIS 10173, at * 50 (E.D. Tenn. Jan. 30, 2004) (explaining that municipality sued by a citizen for assault and battery, arising from the alleged use of excessive force, as well as lack of probable cause, was immune from these claims, because they were, in reality civil rights claims, which are specifically included in the waiver of sovereign immunity in the TGTLA).

Even if governmental immunity is not applicable, however, Plaintiff must still prove that the "independent acts of negligence on the part of government employees led to, contribute to, or allowed injuries directly resulting from intentional acts of another employee." *Baines v. Wilson County*, 86 S.W. 3d 575, 580 (Tenn. Ct. App.2002).  Merely

relying upon the doctrine of *respondeat superior*, as Plaintiff does in the instant case, will not suffice in meeting this burden. *Pendleton v. Met. Gov't of Nashville & Davidson County*, No. M2004, 1910-COA-R3-cv, 2005 WL 2138240, at * 4 (Tenn. Ct. App. Sept. 1, 2005). Accordingly, Plaintiff's assault claim against the City, the CPD, and the individual Defendants who are named in their official capacities, will be **DISMISSED WITH PREJUDICE**.

In addition, Plaintiff has not presented sufficient evidence to support his assault claim against Defendant Lockhart in his individual capacity. Under Tennessee law, a civil cause of action for assault is defined as "any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against that person." *Turner v. City of Chattanooga*, No. 1:07-cv-40, 2010 U.S. Dist. LEXIS 20824, at * 49-50 (E.D. Tenn. March 8, 2010). As discussed *supra*, the sole physical contact Defendant Lockhart had with Plaintiff was placing him in handcuffs during the search of Plaintiff's vehicle and while Plaintiff was transported to police facilities. As discussed *supra*, placing Plaintiff in handcuffs during the June 24, 2008 search and seizure was not unlawful, and did not violate Plaintiff's constitutional rights. Moreover, outside of the search, seizure, and briefly placing Plaintiff in police custody, there is no evidence that Defendant Lockhart's actions were accompanied by any circumstances that would denote an intention of using violence against Plaintiff. Accordingly, Plaintiff's the assault claim against Defendant Lockhart in his individual capacity, will be **DISMISSED WITH PREJUDICE**.

2.  **Plaintiff's Intentional Interference with Freedom of Contract, Intentional Interference with Prospective Economic Advantage, and/or Intentional Interference with Another's Business Claims ("Tortious Interference Claims")**

Plaintiff asserts the following tortious interference claims against Defendants: (1) Intentional Interference with Freedom of Contract; (2) Intentional Interference with Prospective Economic Advantage; and(3) Intentional Interference with Another's Business. These claims are, essentially, redundant tortious interference claims. Plaintiff's tortious interference allegations are all premised upon Plaintiff's contention that he was unable to book the performance artist he intended on meeting in Atlanta, Georgia because Defendant Lockhart seized $48,000.00 from Plaintiff and placed him in police custody for an extended period of time.

The City, the CPD, the individual Defendants Littlefield, Cooper, and Lockhart, all in their official capacities, are all immune from suit with respect to the claim of tortious interference. The TGTLA does not waive a county's state law immunity for certain torts, including "interference with contract rights." Tenn. Code Ann. § 29-20-205(2); *Buchanan v. Williams*, 434 F. Supp. 2d 521, 533 (M.D. Tenn. 2006). Accordingly, Plaintiff's tortious inference claims against the City, the CPD, and the individual Defendants who are named in their official capacities, will be **DISMISSED WITH PREJUDICE.**

Based on the evidence in the record, Plaintiff also has not met his burden with respect to his interference claim against Defendant Lockhart, in his individual capacity. Under Tennessee law, a claim of tortious interference requires a plaintiff to prove the following: (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of

that relationship and not a mere awareness of Plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or means; and (5) damages resulting from the tortious interference. *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W. 3d 691, 701 (Tenn.2002); Tenn. Code Ann. 47-50-109.

In the instant case, Plaintiff has not presented evidence that Defendant Lockhart's actions on June 24, 2008 could lead a reasonable juror to conclude that Defendant Lockhart's actions were driven by an improper motive or means. Accordingly, Plaintiff's tortious interference claims against Defendant Lockhart, in his individual capacity, will be **DISMISSED WITH PREJUDICE**.

### 3. Plaintiff's Intentional Infliction of Emotional Distress Claim

The TGTLA removes immunity for negligent actions of employees unless such actions were related to discretionary functions or certain enumerated intentional torts, including infliction of mental anguish. Tenn. Code Ann. § 29-20-205(1)-(2). The Tennessee Supreme Court has determined that the phrase "infliction of mental anguish" applies only to the intentional form of this tort. *Sallee v. Barrett*, 171 S.W. 3d 822, 829 (Tenn. 2005). The TGTLA provides that the City is immune from suit for intentional infliction of emotional distress caused by a city employee acting within the scope of employment. Tenn. Code Ann.§ 29-20-205. In this instance, the parties do not dispute that Defendant Lockhart was acting within the scope of his employment during the June 24, 2008 traffic stop. Accordingly, Plaintiff's intentional infliction of emotion distress claim

against the City, the CPD, individual Defendants Littlefield, Cooper, and Lockhart, in their official capacities, will be **DISMISSED WITH PREJUDICE.**

Although the governmental entity is immune from liability under the TGTLA, the entity's employees can still be liable in their individual capacities. Under Tennessee law, a plaintiff must establish the following elements to support in support of a claim for intentional infliction of emotional distress: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. Sup. Ct. 1997). Tennessee courts have further explained:

> In describing these elements, we have emphasized that it is not sufficient that a defendant "has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress." A plaintiff must in addition show that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004) (quoting *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999)) (other citation omitted).

Here, Plaintiff has not presented sufficient evidence to establish that Defendant Lockhart's actions constituted an intentional infliction of emotional distress. Plaintiff has presented no evidence, outside of his own conclusory allegations, that Defendant Lockhart's actions were "so outrageous that [they are] not tolerated by civilized society." Similarly, Plaintiff has presented no evidence that Defendant Lockhart "acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress." Thus, the Court finds that, viewing the evidence in the light most favorable to Plaintiff, no

reasonable juror would find in his favor with respect to this claim. Accordingly, Plaintiff's intentional infliction of emotion distress claim against Defendant Lockhart in his individual capacity, will be **DISMISSED WITH PREJUDICE.**

### 4. Plaintiff's Negligence Claim

Plaintiff's negligence claims are governed by the Tennessee Governmental Tort Liability Act ("TGTLA"). Under the TGTLA, "all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201(a). "Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment *except if the injury arises out of*: . . . false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights [or] the institution of prosecution of any judicial or administrative proceeding, even if malicious or without probable cause . . . ." Tenn. Code Ann. § 29-20-205 (emphasis added). The exceptions listed in § 29-20-205 are the only torts for which immunity is *not* removed when an injury is proximately caused by a negligent act or omission of an employee within the scope of his employment. *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 84 (Tenn. 2001).

Under the TGTLA, if the governmental entity at issue is amenable to suit – in other words, if immunity has been removed by § 29-20-205 – then the entity is the proper party-defendant, and the entity's employees are immune from suit. Tenn. Code Ann. § 29-20-

-23-

310(b); *Sallee v. Barrett*, 171 S.W.3d 822, 826 (Tenn. 2005). Conversely, if the governmental entity is not amenable to suit – in other words, if immunity has not been removed by § 29-20-205 – then employees of the entity are proper party-defendants. Tenn. Code Ann. § 29-20-310(c).

Plaintiff's negligence claims are based on the above-described June 24, 2008 search and seizure. Plaintiff alleges that Defendant Lockhart was negligent in searching Plaintiff's vehicle, seizing $48,000.00 from Plaintiff, and taking Plaintiff to the police station at which said monies were tested for the presence of illegal narcotics.

As noted above in connection with liability under 42 U.S.C. § 1983, the Court notes that "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *see also Brandon v. Holt*, 469 U.S. 464, 471-72 (1985); *Belk v. Hubbard*, No. 1:09-cv-199, 2009 U.S. Dist. LEXIS 107262, AT * 5-6 *(E.D. Tenn. Nov. 16, 2009) (explaining that an "official capacity claim" against a police officer is "essentially a suit against the" municipality under the TGTLA). Thus, the negligence claim against Defendant Lockhart in his official capacity is actually a claim against the City. Pursuant to Tenn. Code Ann. § 29-20-205, the City's immunity is removed if the injury is proximately caused by a negligent act of any City employee unless the cause of action arises out of, *inter alia*, false arrest or civil rights. For at least three reasons, however, the City's immunity remains intact, and this negligence claim against the City, the CPD, and the official capacity individual Defendants must be dismissed.

First, pursuant to Tenn. Code Ann. § 29-29-205, the City's immunity is removed only with respect to any "injury proximately caused by a negligent act or omission of any

-24-

employee within the scope of his employment," with certain exceptions. The acts alleged by Plaintiff are essentially intentional torts, although Plaintiff has attempted to characterize them as negligent. In such a situation, Plaintiff must prove that the City committed "an independent act of negligence [that] proximately caused the intentional torts that resulted in [Plaintiff's] injuries." *Hale v. Randolph*, No. 1:02-CV-334, 2004 WL 1854179, at *16 (E.D. Tenn. Jan. 30, 2004); *see also Baines v. Wilson County*, 86 S.W.3d 575, 580-81 (Tenn. Ct. App. 2002). Defendants correctly argue that there is no evidence in the record to suggest that the City was negligent in its training or supervision of Defendant Lockhart. Accordingly, without any evidence of an independent negligent act by the City, the City's immunity is not removed by Tenn. Code Ann. § 29-20-205.

Second, as noted above, Plaintiff's negligence claim based on his alleged unlawful arrest is better characterized as a claim involving the intentional tort of false arrest. Pursuant to Tenn. Code Ann. § 29-20-205, a governmental entity's immunity is not removed when the plaintiff's injuries arise out of a false arrest. Thus, if the Court were to treat Plaintiff's claim as a false arrest claim, the City's immunity would not be removed by § 29-20-205.

Third, Tenn. Code Ann. § 29-20-205 also provides that the City's immunity is not removed when the injury arises out of "civil rights." This Court construes "civil rights" under § 29-20-205 as including claims arising under the federal civil rights laws and the United States Constitution. *Hale*, 2004 WL 1854179, at *17; *cf. Brooks v. Sevier County*, 279 F. Supp. 2d 954, 960 (E.D. Tenn. 2003). Here, as in *Hale*, this claim against the City "clearly arise[s] out of and directly flow[s] from the allegations that the police officers deprived [Plaintiff] of his civil rights by falsely arresting [him] without probable cause . . . ." *Hale*,

2004 WL 1854179, at *17. Because Plaintiff asserted his claim in the context of a civil rights case, his alleged injuries arise out of "civil rights" and the City retains its immunity. *See id.*

Thus, for the reasons explained above, the City retains its immunity under Tenn. Code Ann. § 29-20-205. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's negligence claim against the City, the CPD, the individual Defendants Littlefield, Cooper, and Lockhart, in their official capacities, will be **DISMISSED WITH PREJUDICE**.

Plaintiff's negligence claim against Defendant Lockhart in his individual capacity contends that he "suffered serious person injuries as a proximate result of [Lockhart's] negligent" actions. (Compl. ¶ 26.) To bring a negligence claim, Tennessee law requires that the plaintiff establish the following elements: "1) a duty of care owed by the defendant to the plaintiff; 2) conduct by the defendant falling below the applicable standard of care that amounts to a breach of that duty, 3) an injury or loss; 4) causation in fact; and 5) proximate, or legal, causation." *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000).

Plaintiff's Complaint and responsive briefing, however, does not explicitly provide any factual basis upon which the Court could rely to conclude that Defendant Lockhart's actions were negligent. Specifically, Plaintiff's Complaint and responsive briefing fails to identify a standard of care which Defendant Lockhart was obliged to observe and fails to identify what specific alleged behavior constituted a breach of this duty. Beyond these pleading deficiencies, Plaintiff has not provided any evidence to support his conclusory

allegation that he suffered damages as a result of Defendant Lockhart's negligence. It will well-established that Plaintiff has the burden in establishing the *prima facie* elements of his negligence claim. *Blair v. Westown Mall*, 130 S.W. 2d 761, 767 (Tenn. 2004) (noting that the burden is on a plaintiff to establish a *prima facie* case of negligence). Accordingly, Plaintiff's negligence claim against Defendant Lockhart in his individual capacity, will be **DISMISSED WITH PREJUDICE.**

### 5.    Plaintiff's Conversion Claim

Plaintiff contends that the Defendants committed the tortious act of "conversion," including but not limited to, "conversion by taking under the judicial process" and/or "conversion by public officers." (Compl. ¶ 24.) Under Tennessee law, conversion is the appropriation of tangible property to a party's own use in exclusion or defiance of the owner's rights. *Barger v. Webb,* 391 S.W. 2d 664, 665 (Tenn. 1965). In order for Plaintiff to make out a *prima facie* case of conversion, he must prove the following: (1) the appropriation of another's property to one's own use and benefit; (2) by the intentional exercise of dominion over it; and (3) in defiance of the true owner's rights. *Kinnard v. Shoney's Inc.*, 100 F. Supp. 2d 781, 797 (M.D. Tenn. 2000).

Property may be converted in three ways. *Restatement (Second) of Torts* § 223(a)(1965). First a person may personally dispossess another of tangible property. *Id.* Second, a person may dispossess another of tangible property through the active use of an agent. *McCall v. Owens*, 820 S.W. 2d 748, 751 (Tenn. Ct. App. 1991). Third, under certain circumstances, an individual who had no direct part in dispossessing another of property, may nevertheless, be liable for conversion for receiving the chattel. *Restatement*

*(Second) of Torts* § 223(d)(1965).

In this instance, Plaintiff has not presented sufficient evidence upon which a reasonable juror could conclude that Defendants' seizure of $48,000.00, pursuant to Tenn. Code Ann. § 53-11-451, constitutes an act of conversion. First, there is no evidence in the record that any of the Defendants appropriated Plaintiff's money for their own use and benefit. Second, Plaintiff has failed to present evidence to support a finding that Defendants acted in contravention of any of Plaintiff's rights. As discussed in detail *supra*, the money was seized in accordance with Tennessee state law, and Plaintiff was afforded all of the substantive and procedural due process considerations in challenging this seizure as provided by law.

Thus, the Court finds that summary judgment is appropriate with respect to Plaintiff's conversion claim against Defendants. *Nat'l Solid Wastes Mgmt. Ass'n v. Voinovich*, 959 F.2d 590, 592 (6th Cir. 1992) (noting that nonmoving party cannot rest on pleadings, but must come forward with specific facts or affidavits to support its claims and show existence of genuine, material issue in dispute). Accordingly, Plaintiff's conversion claim against Defendants will be **DISMISSED WITH PREJUDICE.**

       D.    **Plaintiff's Punitive Damages Claims**

As all of Plaintiff's claims against Defendants will be dismissed, there is no need to address his claims for punitive damages. *Love-Sawyer v. Equifax, Inc.*, No. 3:09-0647, 2009 U.S. Dist. LEXIS 89199, * 13 (M.D. Tenn. Sept. 28, 2009). Accordingly, the punitive damages claim under Section 1983 and state law will be **DISMISSED WITH PREJUDICE.**

**IV.    CONCLUSION**

For the reasons explained above, Defendants Motion for Summary Judgment (Court

Doc. 19) is **GRANTED.**  Plaintiff's claims against Defendants are all hereby **DISMISSED**

**WITH PREJUDICE.**

The Clerk is directed to close this case file.


SO ORDERED this 12th day of July, 2010.


                                    _____ */s/Harry S. Mattice, Jr.* _____
                                    HARRY S. MATTICE, JR.
                                    UNITED STATES DISTRICT JUDGE